---
The State *v.* Cadle.
---

have been sustained by the plaintiff, by reason of the breaches thereof.

*J. C. Hall*, for plaintiffs in error.

*Geo. C. Dixon*, for defendant.

———•◆•———

THE STATE *v.* CADLE.

The election in August 1848, was the second general election under the constitution.

Clerks of the district court, and prosecuting attorneys should be biennially elected at the general elections.

*Submitted by agreement from Muscatine District Court.*

*Opinion by* GREENE, J. This was a *quo warranto* on the information of Abraham Smalley against Richard Ca-

dle. The complainant charges Cadle with unlawfully holding and exercising the office of clerk of the district court, in the county of Muscatine, to the exclusion of the relator, who claimed to have been regularly elected to the same office, on the first Monday in August 1849, and to have executed a bond, and to have taken the oath of office as required by law, on the 25th of the same month.

In pleading to the information the defendant acknowledged that he did hold and exercise the office as charged, but denied the usurpation alleged, and the right of Smalley to the office; and he justified by averring that he was duly elected to the said office at a general election held on the first Monday in August, in the year 1848, and on the 15th of the same month qualified himself according to law, and that the term of office had not yet expired. To this plea the relator demurred, but the court overruled the demurrer, and adjudged the plea a sufficient bar to the action. In thus disposing of the demurrer the court necessarily decided that a general election as provided by the constitution, was held on the first Monday in August 1848, at which the defendant was elected to the office in question for the term of two years. The correctness of this decision is controverted by the plaintiff in error, and this is the only question involved in the case.

The constitution provides for the election of clerks of the district court, by the qualified voters of each county, at the general election, and that they shall hold their office for the term of two years. Laws of 1847, Art. 6, § 5, of the state constitution. By the third section of the fourth article it is provided, that "the members of the house of representatives shall be chosen every second year, by the qualified electors of their respective districts on the first Monday in August, whose term of office shall continue two years from the day of the general election." The sixth section of the schedule, declared that the first general election under the constitution should be within three months after its adoption, at such time as the governor by proclamation might appoint, for the election of represen-

tatives in congress and state officers; but the office of clerk
is not enumerated in that section as one of those to be
chosen at that election. Under this section of the consti-
tution the governor appointed the first general election in
October 1846, and at that time the members of the first
general assembly were elected, and clerks were chosen in
a portion of the counties. As several of the clerks were
chosen without legal notice of the election, an act was
passed in which any person who received for clerk a ma-
jority of all the votes cast in the county for state officers,
"at the general election on the 26th October 1846," should
be recognized as clerk on giving the bond and taking the
oath required by law. Laws of 1847, p. 24.

Clerks were again elected on the first Monday in Au-
gust, 1847, in some of the counties, and their election was
declared to be legal by an act of the general assembly, ap-
proved January 25th 1848, and by the same act subse-
quent elections were authorized to take place on the first
Monday in August 1849, and biennially thereafter.

But in many of the counties clerks were elected at the
general election in 1848, and in December following an-
other act was passed which repealed the act of January
25th 1848, so far as it applied to the election of prosecut-
ing attorneys and district clerks, held on the first Monday
in August 1848. This new act also provided that those offi-
cers should be elected on the first Monday in August 1850,
and every two years thereafter in every organized county
in the state. The legislation on this subject has not only
been contradictory, but some of it has been repugnant to
the constitution. By that instrument it is expressly es-
tablished that the clerks and prosecuting attorneys shall be
elected at the *general* election, and hold their offices du-
ring the term of two years, and the time designated for
this general election is the first Monday in August, when
the members of the general assembly are to be biennially
chosen. But the *first* general election as we have seen,
was to be at such time as the territorial governor might
by proclamation appoint. That time having been fixed

The State *v.* Cadle.

in December 1846, it necessarily follows that the next general election as biennially designated by the constitution was on the first Monday in August 1848, and would occur on the same Monday in every alternate year thereafter. This we think, is the only construction that can harmonize with the letter and spirit of the constitution, and such we conclude was the obvious intention of its framers. So far as public convenience can have a bearing upon this question of construction, it was no doubt promoted by the decision below. Most of the elections have been conducted conformable to that view, and with that understanding most of the election laws have been enacted. The first legislature under the constitution clearly recognized that construction, in passing an act defining the time of holding elections for state, district and county officers. Laws of 1847, p. 153. The second section of that act provides that the governor shall be elected every four years counting from the first Monday in August 1846; and the biennial election of secretary, auditor and treasurer of state, counts from the same date according to the third section of the act. In section five, after providing for the election of several county officers on the first Monday of August 1847, and biennially thereafter, it is enacted "that in those counties where there was no election for clerks of the district court and prosecuting attorneys at the last election, there shall be elected on the first Monday in August next, one clerk of the district court and one prosecuting attorney, who shall hold their offices until the *general election on the first Monday in August 1848*" &c., and the same act provides for the election of senators and representatives at the election of 1848, and biennially thereafter. These various sections properly considered show the cotemporaneous construction placed upon the constitution by the general assembly in relation to elections; that construction has generally prevailed in practice, and has repeatedly been sanctioned by judicial decisions. So far then as public convenience can influence a decision upon a question of doubtful construction,

it is in support of the decision made in the court below. But independent of this consideration and without going beyond the explicit language of the constitution we have united in the conclusions, that the general elections authorized by the constitution are biennial, and as the first general election took place in 1846, the second was held on the first Monday in August 1848, and all subsequent ones must be held every two years thereafter ; and that under the constitution the only time appointed for the election of clerks and prosecuting attorneys is at the general elections.

Judgment affirmed.

*D. C. Cloud*, for plaintiff in error.

*W. G. Woodward*, for defendant.